## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 23-cv-21036-SCOLA/GOODMAN

ASSOCIATED ENERGY GROUP, LLC,

  Plaintiff,

v.

UKRAINE INTERNATIONAL AIRLINES PJSC,

  Defendant.

_____/

### REPORT AND RECOMMENDATIONS ON PLAINTIFF'S
### <u>RENEWED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT</u>

In this breach of contract action, Plaintiff Associated Energy Group, LLC ("Plaintiff") filed a Renewed Motion for Final Default Judgment against Defendant Ukraine International Airlines PJSC ("Defendant") [ECF No. 29 ("Renewed Motion")]. Defendant did not respond to Plaintiff's Renewed Motion or otherwise participate in this lawsuit, and the response deadline has expired.

Senior United States District Judge Robert N. Scola, Jr. referred the Renewed Motion to the Undersigned for a "report and recommendations, consistent with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Magistrate Judge Rules." [ECF No. 30]. As explained below, the Undersigned **respectfully recommends** that Judge Scola **grant** the Renewed Motion [ECF No. 29].

## I.    Background

Plaintiff filed a five-count Amended Complaint alleging common law breach of agreement (Count I), goods sold and delivered (Count II), account stated (Count III), unjust enrichment (Count IV), and quantum meruit (Count V). [ECF No. 24].

Plaintiff is an "aviation fuel and services provider which delivers fuel and service to a variety of corporate, commercial, Fixed Based Operator ("FBO") and government clients at 3000+ locations around the world." [ECF No. 24, ¶ 9]. Defendant "is the flag carrier and the largest airline of Ukraine . . . ." *Id*. at ¶ 4. The parties entered into an agreement "for the sale and delivery of aviation fuel and services" by Plaintiff to Defendant. *Id*. at ¶ 1.

Plaintiff's Amended Complaint alleges that Defendant "materially and repeatedly defaulted on its payment obligations to compensate [Plaintiff] for the fuel and services provided and invoiced by [Plaintiff] from February 1, 2022 and through September 16, 2022." *Id*. Plaintiff attached copies of the respective invoices [ECF No. 24-1] and General Terms and Conditions [ECF No. 24-2] to its Amended Complaint as "confirm[ation]" of an agreement between the parties. *Id*.

Plaintiff obtained a Clerk's Default [ECF No. 28] and now seeks the entry of a final default judgment against Defendant. [ECF No. 29]. In support of the instant motion, Plaintiff submitted correspondence between it and Defendant from February 3, 2024. [ECF No. 29-2, pp. 2-4]. Plaintiff also submitted an affidavit from its CEO, Christopher

Clementi, which itself includes additional copies of the invoices and General Terms and Conditions attached to the Amended Complaint. [ECF No. 29-3].

## II.  Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party may then apply to the District Court for a final default judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a final default judgment based solely on the existence of a clerk's default. *Id*. at 1174. Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the cause(s) of action. *Id*. (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[1] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The decision whether to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default judgments are "generally disfavored" because this Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–

---

[1]     In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued on or before September 30, 1981 would become binding precedent in the Eleventh Circuit.

45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support the plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-CV-02528, 2021 WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009)).

A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); *see also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

## III.   Analysis

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted*, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu*, 515 F.2d at 1206).

a.       **Subject-Matter Jurisdiction**

Plaintiff's Amended Complaint states that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332 "because the amount in controversy exceeds $75,000 and is between citizens of U.S. States and a citizen or subject of a foreign state." [ECF No. 24, ¶ 6]. Diversity jurisdiction is proper "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the parties are "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2).

Here, the jurisdictional amount is satisfied because Plaintiff alleges damages exceeding $385,427.05. [ECF Nos. 24, p. 1; 29, p. 2]. Additionally, the Amended Complaint establishes that Plaintiff, an unincorporated entity, is a citizen of Florida, Texas, and Nevada (based on the citizenship of its members), and that Defendant is a citizen of Ukraine. [ECF No. 24, ¶¶ 2–4]. Plaintiff therefore properly demonstrated that complete diversity of citizenship exists. As such, this Court has original subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

b.       **Personal Jurisdiction**

In addition to having subject-matter jurisdiction, a court must also have personal jurisdiction over each defendant. *See Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) ("A judgment rendered in the absence of personal jurisdiction is void and without legal effect") (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a

court has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id*. (citing *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovsky*, 242 F.3d 322, 324 (5th Cir. 2001)).

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citing *Prewitt Enters., Inc. v. Org. of Petroleum Exp. Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003)).

### i.    Service of Process

Service of process is a jurisdictional requirement. *See In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void"); *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022) ("[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment . . . .").

Here, Plaintiff filed a motion seeking authorization for alternative service of process pursuant to Federal Rule of Civil Procedure 4(f)(3). [ECF No. 12, pp. 1–3]. The Court granted Plaintiff's motion, authorizing service "via email to Liudmyla Riaboshapka, Head of Defendant's Legal Department at riaboshapka.liudmyla@flyuia.com, and carbon-copying Benedict Idemundia,

Defendant's known legal counsel, at Benedict.idemundia@clydeco.us." [ECF No. 14, p. 5].[2] Plaintiff filed proof of service certifying that it complied with the Undersigned's Order and sent copies of the Summons [ECF No. 3] and original Complaint [ECF No. 1] to Defendant via e-mail. [ECF No. 15].[3]

Therefore, it properly effected service on Defendant. *See Leading Edge Mktg. Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-23480-CIV, 2022 WL 16756952, at *2 (S.D. Fla. Nov. 7, 2022), *report and recommendation adopted*, No. 21-23480-CIV, 2022 WL 17144227 (S.D. Fla. Nov. 22, 2022) (finding that the defendants were "properly served . . . with the [c]omplaint and summonses via email and Internet publication, consistent with the Court's Order Authorizing Alternate Service"); *Ain Jeem, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306858, at *2 (M.D. Fla. Jan. 27, 2022), *report and recommendation adopted sub nom.*, *Ain Jeem, Inc. v. Individuals*, No. 8:21-CV- 1261-VMC-JSS, 2022 WL 2306874 (M.D. Fla. Feb. 15, 2022) (finding that "[the] [p]laintiff properly effected service

---

[2]     Upon receiving a copy of Plaintiff's original Complaint [ECF No. 1], Mr. Idemundia informed Plaintiff that he no longer represents Defendant. [ECF No. 29, p. 2 n.1].

[3]     Plaintiff further sent copies of the Undersigned's Report and Recommendations on its initial motion for default judgment [ECF No. 23] and its Amended Complaint [ECF No. 24] to Defendant "in the same manner in which the Court authorized alternative service on it." [ECF No. 25].

on [the] [d]efendants pursuant to Federal Rule of Civil Procedure 4(f)(3)" by complying with the court's order authorizing alternate service of process).

### ii.      Amenability to Jurisdiction

In cases involving foreign defendants, "[t]he plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)); *see also United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.") (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999)); *Warner Bros. Ent. Inc. v. Phillips*, No. 6:14-CV-1294-ORL-37GJK, 2015 WL 4590519, at *3 (M.D. Fla. July 28, 2015) ("Even in the default judgment context, as a threshold matter, the plaintiff bears the burden of pleading sufficient facts to make out a prima facie case of personal jurisdiction over non-resident defendants.") (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013)).

Here, Plaintiff relies on the forum-selection clause in its General Terms and Conditions [ECF Nos. 24-2, p. 11; 29-3, p. 24] to establish jurisdiction over Defendant. The relevant language states, "[v]enue of any lawsuit or legal proceeding in Florida shall be in the state or federal courts governing Dade County, Florida, or in the state or federal courts governing Harris County, Texas, unless the law of some other jurisdiction may be

mandatorily applicable . . . ." [ECF No. 24-2, p. 11].[4] Further, the Amended Complaint alleges, "[t]his Court has jurisdiction over this matter because the parties have agreed, under the Agreement, to the jurisdiction of the Florida Courts over any and all disputes arising out of the Agreement." [ECF No. 24, ¶ 5]. This Court must therefore determine whether the forum-selection clause functions as Defendant's consent to jurisdiction.

This analysis first concerns the validity of the clause and Terms and Conditions generally. As explained below, Plaintiff's attached invoices sufficiently prove the existence of a contract between the parties. More critically, though, Plaintiff submitted a copy of a letter from Defendant's legal representative. [ECF No. 29-2, pp. 3–4]. In that letter, Defendant acknowledges this action and concedes that it "lack[s the] funds and assets to pay off the debt to [Plaintiff]" because it is "currently in the process of bankruptcy" in Ukraine. *Id*.[5] Thus, Defendant admitted it is bound by the invoices and

---

[4]     While reviewing this docket, the Undersigned discovered that Plaintiff attached different versions of its General Terms and Conditions to its Amended Complaint [ECF No. 24-2] and Renewed Motion [ECF No. 29-3].

[5]     Requests to stay U.S. proceedings in recognition of foreign bankruptcy actions are governed by Chapter 15 of the U.S. Bankruptcy Code. 11 U.S.C. §§ 1501–1532. Once a foreign proceeding is recognized, "relief . . . becomes immediately applicable, including the automatic stay provision in section 362 of the Code." *United States v. J.A. Jones Constr. Grp.*, LLC, 333 B.R. 637, 638 (E.D.N.Y. 2005) (citing § 1504). However, such relief is "available only after a foreign representative commences an ancillary proceeding for recognition," as "absen[t] recognition under [C]hapter 15, [district courts have] no authority to consider [a defendant's] request for a stay." *Id*. at 638–39; *see also* §§ 1515–1524. Here, Defendant has not participated in this lawsuit, including seeking recognition of its Ukrainian bankruptcy action in accordance with Chapter 15 or requesting a stay.

owes the debt they reflect. The question therefore becomes whether the General Terms and Conditions are properly incorporated as part of the contract to which Defendant is bound.

"[T]he validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general." *Access Telecom, Inc. v. Numaxx World Merchs., LLC*, No. 1:13-CV-20404-LENARD/O'SULLIVAN, 2013 WL 12108129, at *3 (S.D. Fla. Nov. 25, 2013) (quoting *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003)). "It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing." *Id*. (quoting *OBS Co. v. Pace Constr. Corp.*, 558 So. 2d 404, 406 (Fla. 1990)). "A document must be considered incorporated by reference where the incorporating document specifically provides that it is subject to the incorporated document." *Id*. (quoting *Citizens Prop. Ins. Corp. v. Eur. Woodcraft & Mica Design, Inc.*, 49 So. 3d 774, 778 (Fla. Dist. Ct. App. 2010)).

Here, each of Plaintiff's attached invoices specifically provides that they are "subject to [Plaintiff's] General Terms and Conditions (a copy of which is available for review at http://www.aegfuels.com), which customer acknowledges read and accepted." [ECF Nos. 24-1, pp. 2–8; 29-3, pp. 7–13]. Therefore, Plaintiff's General Terms and

---

Thus, this Court has no authority or obligation to stay these proceedings and will continue its analysis accordingly.

Conditions are properly incorporated by reference and are part of the agreement between the parties.

Next, sitting in diversity, this Court must decide whether to examine the forum-selection clause under federal or state law. In *Alexander Proudfoot Co. v. Thayer*, the Eleventh Circuit considered "whether a federal court sitting in diversity should apply state or federal law to determine the effect of a contractual provision conferring personal jurisdiction." 877 F.2d 912, 917 (11th Cir. 1989). The court conducted its analysis using the Supreme Court's methodology in *Hanna v. Plumer*, 380 U.S. 460 (1965). *Id.* at 916–19.

The court first noted that "no federal statute or Rule of Civil Procedure controls issues of personal jurisdiction." *Id*. at 917–18. Addressing the second *Hanna* inquiry pertaining to "the applicability of federal judge-made law," the court found that "federal common law . . . differs sharply from Florida law." *Id*.[6] "In Florida, conferral of personal jurisdiction clauses are not enforced unless an independent ground for personal jurisdiction exists under the Florida Long Arm Statute." *Id*. at 918. (citing *McRae v. J.D./M.D., Inc.*, 511 So. 2d 540 (Fla. 1987) (internal citation omitted)).

---

[6]     Federal judge-made law favors the enforcement of forum-selection clauses. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("[P]arties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process.") (internal citations omitted).

Given the "significant difference between the relevant federal and state laws," the Eleventh Circuit determined that it must apply Florida law because the application of federal judge-made law "would disserve the 'twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws.'" *Id*. at 917 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 n.6 (1988)).[7]

Thus, "United States district courts sitting in Florida apply the same [jurisdictional] approach as the state's courts." *Johns v. Taramita*, 132 F. Supp. 2d 1021, 1029 (S.D. Fla. 2001). This approach involves a "two-step inquiry." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (citing *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015)). First, courts must "determine whether the exercise of jurisdiction is appropriate under [Florida's] long-arm statute." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005) (quoting *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)). If this first inquiry is "satisfactorily answered," then courts "consider[] whether asserting jurisdiction offends the due process clause." *Alexander Proudfoot Co.*, 877 F.2d at 919 (citing *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir. 1985)).

---

[7]     Using hypotheticals, the court explained that applying federal judge-made law in this context would allow a plaintiff to "file in federal court to escape the effect of state law," causing "citizens of the forum state [to be] unfairly discriminated against." *Alexander Proudfoot Co.*, 877 F.2d at 918–19.

Under Florida's long-arm statute, courts have jurisdiction over defendants who "breach[] a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]." Fla. Stat. § 48.193(1)(a)(7). Here, Defendant failed to perform acts required to be performed in Florida by failing to pay money due and owed in Florida.

In *Venetian Salami Co. v. Parthenais*, the Florida Supreme Court stated that it did "not believe that the mere failure to pay money in Florida, **standing alone**, would suffice to obtain jurisdiction over a nonresident defendant." 554 So. 2d 499, 503 (Fla. 1989) (emphasis added). However, it explained that, "[r]ather than holding the [long-arm] statute unconstitutional as applied, we have chosen to hold that the statute extends only to the limits of the due process clause." *Id*. at 503 n.2. Thus, a defendant's failure to pay money due in Florida satisfies § 48.193(1)(a)(7), but it is not enough to subject a defendant to the jurisdiction of Florida courts absent independently satisfied due process considerations.

Under § 48.193(1)(a)(7) in a default judgment context, a plaintiff must allege that the defendant breached the contract specifically by failing to pay for goods provided by the plaintiff. *See Omm Imps., Inc. v. Summer Creation Grp., Inc.*, No. 19-21285-CIV-WILLIAMS/TORRES, 2019 WL 11505085 (S.D. Fla. Oct. 2, 2019), *report and recommendation adopted*, No. 19-21285-CIV-WILLIAMS, 2019 WL 13224953 (S.D. Fla. Oct. 18, 2019). There, Chief Magistrate Judge Edwin G. Torres stated:

> It is well established that "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state" is one

of the enumerated acts that will subject a person or company to jurisdiction in Florida. Fla. Stat. § 48.193(1)(a)(7). [The] [p]laintiff argues that personal jurisdiction exists under this provision because the parties established a course of dealing where [the] [d]efendant paid [the] [p]laintiff for its cosmetic products via a wire transfer or credit card payment. But, unlike other cases where a party committed a breach under Florida law for failing to pay for goods or services, [the] [p]laintiff never alleges that [the] [d]efendant breached the contract in this way.

*Id.* at *3. He further explained that **"[i]f [the] [p]laintiff had alleged that [the] [d]efendant failed to pay for goods under the contract,"** then that plaintiff would have met the necessary conditions for Florida's long-arm statute. *Id.* at *3 n.2 (emphasis added) (citing *Stewart v. Julana Dev. Corp.,* 678 So. 2d 1385, 1388 (Fla. 3d DCA 1996) (failure to perform under contract to be performed in Florida satisfies Section 48.193(1)(g)).

Here, Plaintiff meets this standard by specifically alleging that Defendant "failed and refused to pay" a sum "due and owing for fuel and services sold and delivered [which] currently exceeds US $385,427.05." [ECF No. 24, ¶ 1]. Further, in its letter to Plaintiff, Defendant concedes its failure to pay for goods furnished by Plaintiff. [ECF No. 29-2, pp. 3–4]. Thus, on top of Plaintiff specifically alleging breach by failure to pay for goods, Defendant's own admission of its debt confirms that allegation.

Given an independent basis under the long-arm statute, this Court must now consider whether exercising jurisdiction over Defendant would offend due process. "Normally, courts consider whether the defendant purposefully established 'minimum contacts' with the forum state." *Alexander Proudfoot Co.,* 877 F.2d at 921 (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemp. Comp. & Placement,* 326 U.S. 310, 316 (1945)). "This

analysis requires courts to determine whether 'the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being hailed into court there.'" *Id*. (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Here, the existence of a forum-selection clause satisfies this second inquiry, so a traditional due process analysis is unnecessary. *See id*. ("Because the nonresident defendant in the present case contractually agreed to personal jurisdiction in Florida, the usual due process analysis need not be done."); *Off. Depot, Inc. v. Pelletier*, No. 16-81170-CIV-DIMITROULEAS, 2016 WL 10932510, at *4 (S.D. Fla. Sept. 8, 2016) ("Here, where Defendant [] has contractually agreed to personal jurisdiction in Florida, the Court need only determine that personal jurisdiction is proper under Florida's long-arm statute . . . ."); *Healthcare Appraisers, Inc. v. Healthcare FMV Advisors, LLC*, No. 10–80293–CIV, 2011 WL 4591960, at *5 (S.D. Fla. Sept. 30, 2011) ("As the United States Supreme Court noted in *Burger King*, the due process analysis is unnecessary where a nonresident defendant has consented to suit in a forum.") (citing *Burger King Corp.*, 471 U.S. at 472 n.14).[8]

---

[8]      Although the traditional due process analysis is unnecessary, the Undersigned notes that Defendant could have "reasonably anticipate[d] being hailed into court" in Florida. *World-Wide Volkswagen Corp.*, 444 U.S. at 297. Defendant engaged in continuous transactions with Plaintiff, a U.S. entity, "from February 1, 2022 through September 16, 2022." [ECF No. 24, ¶ 1]. Defendant "never objected to" several invoices expressly directing payment -- in U.S. currency -- to Plaintiff in Miami. [ECF No. 29, p. 5]. Further, being hailed to court in the U.S. is not a novel concept to Defendant, as it recently participated in Case No. 3:22-cv-00014-H-JLB before the U.S. District Court for the Southern District of California. [ECF No. 12, ¶ 9].

While neither Defendant's failure to pay money due in Florida nor the existence of a forum-selection clause would *alone* satisfy both aspects of a Florida state law analysis, the combination is sufficient to subject Defendant to this Court's jurisdiction. *See Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV-MOORE/GARBER, 2007 WL 712389, at *2 (S.D. Fla. Mar. 7, 2007) ("Where a requirement to pay money in Florida has been coupled with a Florida venue selection clause in a contract, courts have held that the nonresident defendant should reasonably expect to be hailed into court in Florida.") (quoting *Glob. Satellite Commc'n Co. v. Sudline*, 849 So. 2d 466, 469 (Fla. Dist. Ct. App. 2003)).

### c.   Liability

As noted, the Amended Complaint alleges common law breach of agreement (Count I), goods sold and delivered (Count II), account stated (Count III), unjust enrichment (Count IV), and quantum meruit (Count V). [ECF No. 24].

### i.   Count I

"Under Florida law, the elements of a breach of contract claim are (1) a valid contract, (2) a material breach, and (3) damages." *Phawa, LLC v. Marjaba Imp. & Exp. Corp.*, No. 21-22208-CV-ALTMAN, 2021 WL 4150842, at *2 (S.D. Fla. Aug. 26, 2011), *report and recommendation adopted*, No. 21-CV-22208-ALTMAN, 2021 WL 4147770 (S.D. Fla. Sept. 13, 2021) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)).

Here, the parties formed a contract when "[Plaintiff] and Defendant entered into the Agreement whereby [Plaintiff] agreed to sell and deliver fuel to Defendant's aircraft."

[ECF No. 24, ¶ 21]. The Amended Complaint states that "Defendant materially breached its obligations to make timely payments and has acknowledged their [sic] multiple breaches of the Agreement." *Id*. at ¶ 25. Finally, "[a]s a result of these breaches, Plaintiff has suffered damages in the amount of US $385,427.05 . . . ." *Id*. at ¶ 27.

The Undersigned finds that Plaintiff's allegations, deemed admitted by virtue of Defendant's default, sufficiently state a claim for breach of contract. *See Associated Energy Grp., LLC v. SRS Aviation (Pty) Ltd*., No. 23-CV-24070, 2024 WL 3497612, at *2 (S.D. Fla. Jan. 22, 2024) (granting Plaintiff's motion for default judgment based on a parallel complaint).

The Undersigned notes that Plaintiff attached two different versions of its General Terms and Conditions to its Amended Complaint [ECF No. 24-2] and Renewed Motion [ECF No. 29-3]. However, after a thorough comparison of the documents, the Court finds them to be substantively and effectively the same for the purposes of this action.[9]

---

[9]     For instance, Plaintiff removed the language, "unless the law of some other jurisdiction may be mandatorily applicable . . . ." from its forum-selection clause. [ECF Nos. 24-2, p. 11; 29-3, p. 24]. The legal effect of the clause with and without this language is the same, as the Court would apply any mandatorily applicable law either way. Further, all the other edits are even less relevant here. Plaintiff removed or added certain non-applicable sections, such as "Netting of Payment Terms" [ECF No. 24-2, p. 6] and "Waiver of Sovereign Immunity" [ECF No. 29-3, p. 25], and made mere formatting edits to other sections like "Fuel" [ECF Nos. 24-2, p. 3; 29-3, pp. 17–18] and "Indemnification" [ECF Nos. 24-2, p. 8; 29-3, p. 26].

### ii.     Counts II-V

In light of the Undersigned's findings regarding Count I, it need not proceed with

an analysis of Plaintiff's other claims. In *Associated Energy Grp., LLC*, Plaintiff alleged the

same five counts that it alleges here. 2024 WL 3497612, at *2; [ECF No. 24]. After

determining that it would enter a default judgment against the defendant as to Plaintiff's

breach of contract claim, the court stated:

> **[B]ecause we are entering final judgment on the Plaintiff's breach-of-**
> **agreement claim, it would be "inappropriate" for us to enter separate**
> **judgments on these other counts.** *Venus Concept v. USA, Inc. v. Johnson*, 2023
> WL 3778245, at *3 (S.D. Fla. Mar. 2, 2023) (Lenard, J.) ("[B]ecause the Court
> is entering final default judgment on the claim[] for breach of contract . . .
> the Court finds that entering default final judgment on the claims for unjust
> enrichment and account stated is inappropriate."); *see also Venus Concept*
> *USA Inc. v. Vitahydr8*, LLC, 2022 WL 204685, at *2 (S.D. Fla. Jan. 24, 2022)
> (Martinez, J.) ("Because the Court enters judgment in [the plaintiff's] favor
> on its claim[] for breach of contract . . . , the Court denies [the plaintiff's]
> motion for final judgment as to its claims for unjust enrichment,
> open account, and account stated."); *QC Constr. LLC v. Cypress Contracting*
> *& Dev. Corp.*, 2023 WL 7224155, at *1 n.1 (M.D. Ga. Nov. 2, 2023) ("Because
> the Court finds that [the defendant] breached the construction contract . . .
> , the Court declines to address [the plaintiff's] quantum meruit and unjust
> enrichment claims." (citing *Continental Cas. Co. v. Trucks, Inc.*, 2011 WL
> 5325537, at *2 n.2 (M.D. Ga. Nov. 3, 2011))).

*Id*. (emphasis added).

Because the Undersigned finds that Plaintiff established Defendant's liability for

breach of contract, it would be "inappropriate" to enter further default judgments on

Plaintiff's remaining claims. Therefore, the Undersigned **respectfully recommends** that

Counts II–V be **dismissed with prejudice**. *See id.* (citing *Johnson*, 2023 WL 3778245, at *3

18

(dismissing with prejudice the claims that were duplicative of the breach-of-contract claim)).

### d.   Damages

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Ctrs. Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2688 at 58–59 (3d ed. 1998)).

Here, Plaintiff seeks "US $572,934.98 in liquidated damages, which include the total amount of US $385,427.05[10] due for fuel sold to Defendant by [Plaintiff] plus US

---

[10]    The invoices total $445,819.26 [ECF No. 29-3, pp. 7–13]. Plaintiff makes no mention of any partial payment, yet alleges an outstanding "balance" of $385,427.05. [ECF No. 29, p. 5]. Based on Defendant's own calculation of its debt, it appears Defendant paid invoice #1232659 in full and made partial payment of invoice #1232984 [ECF Nos. 29-2, p. 24; 29-3, pp. 7–13], hence Plaintiff's alleged damages figure.

$187,507.93 in interest and late fees under [Plaintiff's] General Terms and Conditions."

[ECF No. 29, p. 7]. Like in *Associated Energy Grp., LLC*, Plaintiff "supports these figures"

with invoices reflecting the parties' dealings, [ECF No. 29-3, pp. 7–13], and by "providing

the agreed-upon method for calculating interest and late fees under the Terms and

Conditions." 2024 WL 3497612, at *2; *see* [ECF No. 29-3, ¶ 15 n.1 ("Pursuant to Section 9

of [Plaintiff's] General Terms and Conditions, '[p]ast due amounts shall accrue interest at

1.5% per month. Additionally, as a late fee, [Plaintiff] charges $100 per month per invoice

not paid in full")]. Further, Plaintiff's CEO, Christopher Clementi, "reviewed [Plaintiff's]

business records" and submitted an affidavit "attest[ing] that [Defendant] failed to pay"

the debt reflected by the invoices. *Netuno USA, Inc.*, 2021 WL 9565806, at *2; [ECF No. 29-

3].

    Accordingly, the Court finds that "the record adequately reflects the basis for [the]

award" of $572,934.98 in liquidated damages. *Associated Energy Grp., LLC*, 2024 WL

3497612, at *2 (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d

1538, 1544 (11th Cir. 1985)).

    Plaintiff also seeks pre-judgment interest, "calculated from February 15, 2022 [the

date of Defendant's default] to [July 31, 2024, the date of this Order]." [ECF No. 29, p. 7].

Plaintiff properly requests pre-judgment interest according to the quarterly rates

prescribed pursuant to Fla. Stat. § 55.03. *See Associated Energy Grp., LLC*, 2024 WL 3497612,

at *2 ("We . . . apply the quarterly rates prescribed by Florida law . . . ."); *Current Judgment*

*Interest      Rates*,      MY      FLA.      CFO      (Jan.      1,      2024),

https://www.myfloridacfo.com/division/aa/local-governments/judgement-interest-rates

(reporting quarterly interest rates).

Thus, Plaintiff is entitled to $63,219.49 in pre-judgment interest according to the

following schedule:

| Principal | Start Date | End Date | Days | Daily Rate | Total |
|---|---|---|---|---|---|
| $385,427.05 | Feb. 15, 2022 | Mar. 31, 2022 | 45 | 0.000116438 | $2,019.53 |
| $385,427.05 | Apr. 1, 2022 | June 30, 2022 | 91 | 0.000116438 | $4,083.93 |
| $385,427.05 | July 1, 2022 | Sept. 30, 2022 | 92 | 0.000118904 | $4,216.25 |
| $385,427.05 | Oct. 1, 2022 | Dec. 31, 2022 | 92 | 0.000130137 | $4,614.57 |
| $385,427.05 | Jan. 1, 2023 | Mar. 31, 2023 | 90 | 0.000151233 | $5,246.04 |
| $385,427.05 | Apr. 1, 2023 | June 30, 2023 | 91 | 0.000180274 | $6,322.91 |
| $385,427.05 | July 1, 2023 | Sept. 30, 2023 | 92 | 0.000210685 | $7,470.74 |
| $385,427.05 | Oct. 1, 2023 | Dec. 31, 2023 | 92 | 0.000233973 | $8,296.52 |
| $385,427.05 | Jan. 1, 2024 | Mar. 31, 2024 | 91 | 0.000248361 | $8,710.98 |
| $385,427.05 | Apr. 1, 2024 | June 30, 2024 | 91 | 0.000255191 | $8,950.53 |
| $385,427.05 | July 1, 2024 | Aug. 2, 2024 | 33 | 0.000258470 | $3,287.50 |
| | | | | **TOTAL:** | **$63,219.49** |

Plaintiff  further  requests  that  the  Court  "reserve  jurisdiction  to  determine

reasonable attorney's fees and costs, pursuant to Section 9.2 of [Plaintiff's] General Terms

and Conditions, agreed to by the parties." [ECF No. 29, p. 9].[11]

---

[11]      Specifically, Plaintiff seeks an award for its "additional home office overhead and demobilization expense, travel and lodging in connection with the extension and the attempts to obtain payment, extraordinary audit costs, court costs and attorney's fees." [ECF No. 24, ¶ 27].

## IV.    Conclusion

Accordingly, the Undersigned **respectfully recommends** that the Court **grant** Plaintiff's Renewed Motion [ECF No. 29] and award it $636,154.47 ($572,934.98 in damages and $63,219.49 in pre-judgment interest) plus any fees and costs the Court deems reasonable.[12] The Court should additionally reserve jurisdiction to address Plaintiff's future request for fees and costs in this action.

## V.    Objections

The parties will have seven (7)[13] days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Senior United States District Judge Robert N. Scola, Jr. Each party may file a response to the other party's objection within seven (7) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error

---

[12]    In addition to seeking pre-judgment interest, Plaintiff also seeks post-judgment interest. [ECF No. 29, p. 9]. "[P]ost-judgment interest automatically accrues under 28 U.S.C. § 1961." *Landi v. Home Depot USA, Inc.*, No. 2:17-CV-701-FtM-38MRM, 2020 WL 10465289, at *1 (M.D. Fla. July 22, 2020) (citing *Nat. Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 233 F. App'x 890, 895 (11th Cir. 2007) ("That the judgment of the district court did not address post[-]judgment interest is of no consequence.")).

[13]    The Undersigned is shortening the deadlines because Defendant has defaulted, and it therefore appears unlikely that it will respond in any way, including to file Objections.

if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on August 2, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies Furnished to:**
The Honorable Robert N. Scola Jr.
All Counsel of Record